UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEONEL ZUBIZARRETA,

                                  **MEMORANDUM & ORDER**
                                  08 CV 2723 (RJD) (RL)

                Plaintiff,

-against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
-------------------------------------------------------------------X

DEARIE, Chief Judge.

Pursuant to 42 U.S.C. § 405(g), Leonel Zubizarreta moves for judgment on the pleadings, seeking reversal of the decision of the Commissioner of Social Security ("Commissioner") that he was not disabled from May 14, 2003 to September 5, 2007. The crux of Zubizarreta's argument is that the Commissioner, who concluded that Zubizarreta's confluence of knee pain, back pain, and obesity was disabling as of September 6, 2007, erred in not concluding that those same impairments were also disabling as of May 14, 2003, Zubizarreta's alleged onset date of disability. Zubizarreta requests that the Court reverse and remand the matter for the sole purpose of having the Commissioner calculate benefits as of May 14, 2003.

The Commissioner also moves for judgment on the pleadings. The Commissioner does not dispute that Zubizarreta was disabled as of September 6, 2007. And he concedes that his finding that Zubizarreta was able to perform the full range of light work from May 14, 2003 to September 5, 2007, is predicated on several legal and factual errors. According to the Commissioner, however, the record evidence does not establish that Zubizarreta's injuries were severe or permanent enough on May 14, 2003 to compel a finding that Zubizarreta was disabled

as of that date, and he urges the Court to remand the matter so that the correct onset date of disability can be determined.

For the reasons that follow, the Court finds that the record evidence persuasively establishes that Zubizarreta was disabled as of October 25, 2004, and the matter is remanded for the calculation of benefits as of that date. However, because the Court cannot say that the evidence persuasively establishes that Zubizarreta was disabled on May 14, 2003, the case is remanded for further proceedings so that the Commissioner can determine whether Zubizarreta was also disabled as of that date (or at any point prior to October 25, 2004).

## BACKGROUND

Zubizarreta is a retired New York City Police Department sergeant with nearly 20 years of service. On November 14, 2000, he injured himself while climbing stairs at work. An MRI of his right knee showed a sprain of his quadriceps muscle and he was placed on physical therapy twice a week for four to five months. He eventually returned to full duty.

On March 25, 2002, Zubizarreta injured his right knee when he slipped down some subway steps while working undercover. An MRI of the right knee revealed a complete tear of the anterior cruciate ligament. On June 6, 2002, he had reconstructive surgery to repair the tear. In November 2002, Zubizarreta returned to work after being reassigned to a precinct closer to his home. He testified that because of the persistent pain in his right knee he would sign in and lie down on the couch in the precinct lounge for the day. In January 2003, the N.Y.P.D. Medical Board approved Zubizarreta's application for accident disability retirement, finding that his knee injury and persistent knee pain rendered him unable to perform his duties as a police officer. (Tr. 231-34.) Zubizarreta continued to report to work in a limited capacity until March 2003, and

after using up his remaining vacation and sick leave, retired from the N.Y.P.D. in July 2003. He has not worked since.

Zubizarreta first filed for social security disability benefits on August 18, 2003, claiming an onset date of disability of May 14, 2003.[1] He claims that because he is unable to sit, walk, or stand for extended periods of time, he spends most of his time at home reclined on his couch watching TV. He testified that his knee pain ranges in intensity between an eight and nine on a scale on one to ten if he stands or walks for any lengthy period of time. He needs to use a derotation brace on his knee to get around and he is unable to walk for more than a few blocks without needing to rest.

Since October 2004, Zubizarreta has been under the care of Dr. Aric Hausknecht, a neurologist and pain management specialist, for lower back pain that Zubizarreta claims came about when he was forced to start compensating for his knee injury. In October 2004, an MRI revealed L4-5 disc herniation impinging on the L5 nerve root and an EMG/NCV test revealed bilateral L5-S1 radiculopathy. The pain, which shoots down to his left ankle, is constant and ranges in intensity between an eight and nine on a scale of one to ten. He takes the maximum dose of Vicodin three times a day to alleviate the pain and he supplements the Vicodin with over the counter medication as needed. While the Vicodin provides temporary relief in that it decreases his pain level to about a six, it also makes him drowsy to the point that he often falls asleep. He tried using the morphine patch but it made him nauseous and put him in a "dream-like" state so he no longer takes it.

---

[1] Zubizarreta's date last insured was determined to be December 31, 2007.

In addition, at 5'9" tall and with his weight fluctuating between 300 and 330 pounds, Zubizarreta has been obese throughout the entire period. It is a combination of his knee injury, back injury, and obesity that Zubizarreta claims render him disabled.

On September 19, 2006, Administrative Law Judge Seymour Fier issued a written decision in which he concluded that despite Zubizarreta's inability to perform his past work as a police officer, Zubizarreta was not entitled to disability benefits because he retained the ability to lift and carry up to ten pounds, stand and walk for up to two hours and sit for up to six hours. (Tr. at 59.) The Appeals Council reversed and vacated the decision, finding that the ALJ made several legal and factual errors. Specifically, the Appeals Council directed ALJ Fier to explain the weight given to the findings and opinions of each of Zubizarreta's physicians, and to give further consideration to Zubizarreta's residual functional capacity, including specifically addressing the effects that Zubizarreta's back impairment and obesity had on his limitation of function. Regarding the latter directive, the Appeals Council concluded that while Zubizarreta's back impairment was not mentioned in the N.Y.P.D. Medical Board's January 2003 report, the "impairment developed sometime later with some indication at [a] consultative examination [in October 2003] and [became] a more clearly defined problem in October 2004." (Tr. 98-99.) The Appeals Council also noted that while obesity is not a listed impairment under the social security regulations, it is "nevertheless an impairment and can cause limitation of function and add to the effects of other impairments and should be evaluated according to Social Security Ruling 02-01p." (Tr. at 99.)

On remand, ALJ Fier concluded that Zubizarreta was not disabled from May 14, 2003 through September 5, 2007, finding that Zubizarreta retained the capacity to perform the full

range of light work.[2] However, seemingly relying solely on a letter from one of Zubizarreta's physicians dated September 6, 2007, which indicated that Zubizarreta was undergoing treatment for several illnesses, including weight loss treatment for his morbid obesity, the ALJ concluded that Zubizarreta "should be given a period of disability to accomplish the weight reduction since his residual functional capacity from the obesity would at present reduce the claimant's residual functional capacity to less than sedentary work." (Tr. 39.) ALJ Fier's decision became the final decision of the Commissioner when the Appeals Council denied Zubizarreta's request for review. This action followed.

## DISCUSSION

Zubizarreta argues that because ALJ Fier found that his "confluence of [] well-documented orthopedic problems (right knee arthritis and lumbar radiculopathy) coupled with [his] obesity" was disabling on September 6, 2007 and "[b]ecause these factors were all well-documented as of [his] alleged onset date, [May 14, 2003]," the only logical conclusion is that he must have also been disabled as of May 2003. (Plaintiff's Br. at 24-25.) Thus, according to Zubizarreta, reversal and remand solely for the calculation of benefits as of May 14, 2003, is the appropriate remedy because further evidentiary proceedings would serve no purpose. See Kearney v. Astrue, 2008 WL 2705525, at *4 (E.D.N.Y. July 11, 2008) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development of the evidence. On the other hand, we have reversed and ordered that benefits be paid when the record provides

---

[2] ALJ Fier concluded that during this time Zubizarreta could have "lifted/carried ten pounds frequently and twenty pounds occasionally; sat, stood, and walked for six hours in an eight hour workday; and had an unlimited ability to push/pull." ALJ Fier also concluded that "[n]o nonexertional limitations significantly eroded the claimant's residual functional capacity." (Tr. 39.)

5

persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.") (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

In response, the Commissioner concedes that ALJ Fier made several legal and factual errors that warrant remand. The Commissioner argues, however, that reversal and remand solely for the calculation of benefits is not appropriate because the evidence does not persuasively establish that Zubizarreta's back impairment and obesity were disabling as of May 14, 2003. Instead, the Commissioner urges the Court to remand for further proceedings so that the ALJ can be given an opportunity to correct the numerous legal and factual errors that he made and determine Zubizarreta's correct onset date of disability.

I.  Treating Physician Rule

Both parties agree that the ALJ's most significant error was his failure to give good reasons for discounting the opinions of Zubizarreta's treating physician, Dr. Aric Hausknecht.[3] As Zubizarreta's treating physician, Dr. Hausknecht's opinions are entitled to controlling weight so long as they are "well-supported by medically acceptable and clinical laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in the record, such as the opinions of other medical experts." Urena-Perez v. Astrue, 2009 WL 1726212, at *2 (S.D.N.Y. June 18, 2009) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)). After reviewing the record, the Court finds that Dr. Hausknecht's findings are entitled to controlling weight.

---

[3] The Commissioner also concedes that ALJ Fier failed to, among other things, provide a narrative description describing how the evidence supports each of his conclusions as to Zubizarreta's functional capabilities; erred in not explaining the basis for his finding that Zubizarreta was limited to performing less than sedentary work as of September 6, 2007; and erred in failing to appreciate the fact that Zubizarreta's pain medications had serious side effects.

Dr. Hausknecht treated Zubizarreta for nearly three years, seeing him on a regular basis once every couple of months. At the first examination on October 25, 2004, Zubizarreta presented with right knee pain and lower back pain that Zubizarreta reported came about as a result of his compensating for his knee injury. He described the pain in his lower back as sciatica and reported difficulty sitting, standing, bending, lifting, walking, and riding in a car. Zubizarreta reported that he was taking the pain medications Bextra and Hydrocodone but that they had been minimally effective and caused drowsiness. Dr. Hausknecht observed that Zubizarreta walked with an antalgic gait, and noted atrophy of the right thigh and 4+/5 weakness of the right hip flexors and right knee extensors, and diffuse tenderness of the right knee joint and pain upon mobilization of the left knee.

On inspection of the lumbar spine, Dr. Hausknecht observed lumbar paraspinal tenderness and associated muscle spasm. The seated straight leg raise test was positive on the left side at 60 degrees, indicating disc herniation. Dr. Hausknecht ordered an MRI of the lumbosacral spine to assess for structural pathology and a NCV/EMG test to assess for radiculopathy and neuropathy. He instructed Zubizarreta on some home stretching exercises and renewed his pain medication prescriptions. Based on Zubizarreta's history and physical exam, Dr. Hausknecht diagnosed Zubizarreta with right and left knee arthropathy, left ankle arthropathy and lumbosacral derangement. He opined that Zubizarreta was "totally disabled" and advised him to restrict his activities. Dr. Hausknecht opined that Zubizarreta's prognosis was "guarded." (Tr. 269-71.)

Dr. Hausknecht next treated Zubizarreta on November 29, 2004. He noted that the week before his visit Zubizarreta had undergone a right knee arthroscopy performed by Dr. Michael Schwartz and was complaining of a great deal of pain and swelling in his right knee joint. He

noted diffuse tenderness in the right knee and left knee joints. Zubizarreta's gait was antalgic. The seated straight leg raise test was positive on the right side at 45 degrees and on the left side at 50 degrees. There was a 33 percent loss of forward flexion in the lumbar spine. Dr. Hausknecht noted that the EMG/NCV test he ordered at Zubizarreta's previous visit revealed bilateral L5-S1 radiculopathy and that the MRI revealed L4-5 disc herniation impinging on the L5 nerve root.[4] Dr. Hausknecht opined that Zubizarreta was "totally disabled" and advised him to restrict his activities. He noted that Zubizarreta's prognosis was "poor." (Tr. 272-73.)

Dr. Hausknecht treated Zubizarreta on January 24, 2005, March 21, 2005, May 16, 2005, July 11, 2005, October 3, 2005, November 14, 2005, January 16, 2006 and May 20, 2006, and opined that Zubizarreta showed no significant clinical improvement during this time. (Tr. 299.)

In a June 26, 2006 visit, Zubizarreta reported that he was unable to sit for more than half an hour without his legs going numb and unable to stand for more than half an hour or walk for more than two blocks without experiencing pain in his lower back and knees. Dr. Hausknecht noted that while the lower and upper extremities evidenced intact motor strength and that muscle tone was within normal limits in the extremities with no evidence of palpable spasticity, there was lumbar paraverterbral tenderness and muscle spasm. The seated straight leg raise test was positive on the left side at 60 degrees and on the right side at 50 degrees.

Dr. Hausknecht opined that Zubizarreta demonstrated progressively worse symptoms since the time of his injury. In a Treating Doctor's Patient Functional Assessment To Do

---

[4] In a report dated November 18, 2004, Dr. Ronald Schwinger, the radiologist who interpreted Zubizarreta's MRI results, concluded that the MRI revealed a left paracentral disc herniation at L4-5, which did not lead to significant canal or foraminal stenosis, but did impinge upon the left L5 nerve root centrally. Dr. Schwinger also noted that the MRI revealed disc desiccation at L4-5 with loss of disc height. Disc height, however, was preserved at higher lumbar levels. Dr. Schwinger's "impression" was L4-5 left paracentral disc herniation impinging upon the left L5 nerve root centrally. (Tr. 310-11.)

8

Sedentary Work, Dr. Hausknecht opined that Zubizarreta would be able to stand or walk for less than two hours in an eight hour workday, sit less than two hours, lift or carry more than five pounds but less than ten pounds for a total of up to 1/3 of an eight hour workday, and lift less than five pounds for a total of up to 2/3 of an eight hour workday. Dr. Hausknecht opined that Zubizarreta would be forced to take frequent breaks at work to lie down for approximately 20 to 30 minutes at a time, would miss work at least twice a month, and that his pain medications caused side-effects that would interfere with his ability to function in a work setting. Dr. Hausknecht ultimately concluded that Zubizarreta "has a permanent total disability" and is "unable to engage in any gainful form of employment" including sedentary work. (Tr. 297-98.)

In an August 20, 2007 report, Dr. Hausknecht recorded substantially similar findings. He ordered another NCV/EMG test, which revealed evidence of acute and chronic bilateral L5-S1 radiculopathy as well as evidence of bilateral carpal tunnel syndrome. (Tr. 322.) He opined that Zubizarreta would be able to stand or walk for less than two hours in an eight hour workday, sit less than two hours, lift or carry less than five pounds for a total of up to 1/3 of an eight hour workday, and lift less than three pounds for a total of up to 2/3 of an eight hour workday. He again concluded that Zubizarreta's pain would prevent him from working an eight hour workday and that his pain medications caused side-effects that would interfere with his ability to work. (Tr. 329-33.) He noted that surgical intervention was an option in the future and that Zubizarreta will likely require lifelong medical attention. He opined that Zubizarreta was permanently and totally disabled from all forms of gainful employment. (Tr. 354-57.)

Opinions from other medical sources support Dr. Hausknecht's findings and confirm Zubizarreta's complaints of pain. In a June 21, 2006 examination, Dr. Michael Schwartz, the orthopedic surgeon who performed both of Zubizarreta's right knee surgeries, noted tenderness

9

along the left lower lumbar region, but no spasm. While he noted 5/5 motor strength throughout the bilateral lower extremities, including hip flexion and extension, and knee flexion and extension, he also noted limited forward flexion and extension of the back. In a Treating Doctor's Patient Functional Assessment To Do Sedentary Work, Dr. Schwartz opined that Zubizarreta could stand or walk for less than one hour, sit for less than 4 hours, lift and carry five to ten pounds up to 1/3 of an eight hour work day and less than five pounds for 2/3 of a work day. He also opined that Zubizarreta would have to take frequent breaks during the work day and that Zubizarreta's pain medication would interfere with his ability to function in a work setting. He ultimately concluded that Zubizarreta could not perform any type of work, including sedentary work. (Tr. 255-56.)

Dr. Louis Lombardi, the Commissioner's medical advisor, testified that Zubizarreta's complaints of lower back pain and knee pain when standing, walking and sitting were consistent with the medical evidence and that it was "very possible" that he would have functional limitations on sitting due to increased pain. (Tr. 459, 463.) He opined that the type and dosage of pain medications that Dr. Hausknecht prescribed were appropriate for Zubizarreta's symptoms and that because of their sedative nature, Zubizarreta's ability to function in a work setting would be compromised, including the need to take frequent breaks during the workday. (Tr. 482.) Indeed, Dr. Lombardi testified that "there's no doubt in my mind that [Zubizarreta] has a problem." (Tr. at 483).

While the medical evidence provides ample support for Dr. Hausknecht's findings, the Court is hard-pressed to find any evidence, let alone substantial evidence, that is inconsistent or contradicts his findings. Other than the medical source assessments prepared by Drs. Hausknecht and Schwartz, the only other assessment in the record was prepared in November

10

2003 -- one year prior to the MRI and EMG/NCV tests revealing disc herniation impinging on the nerve root and radiculopathy -- by a non-medical, non-examining lay disability analyst. While the analyst concluded that Zubizarreta retained the capability to perform sedentary work, his opinion cannot constitute substantial evidence sufficient to discount Dr. Hausknecht's opinions. See Hopper v. Astrue, 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (ALJ did not err in giving no weight to opinions of lay disability analyst because an analyst is not an acceptable medical source under the social security regulations) (citing 20 C.F.R. § 404.1513(a)).

Further, while the Commissioner points to the April 2005 findings by Dr. Sebastian Lattuga, a consulting orthopedist and spine specialist, that Zubizarreta presented with normal gait and station, full range of motion, and no evidence of spastic motions or atrophy in the lower extremities as evidence that Zubizarreta's back problems were not disabling as of that date, this evidence can hardly constitute substantial evidence to discount Dr. Hausknecht's opinions. As an initial matter, Dr. Lattuga examined Zubizarreta once -- therefore giving only a snapshot of Zubizarreta's condition at best -- and did not opine on Zubizarreta's functional capabilities. See Pogozelski v. Barnhart, 2004 WL 1146059, at *13 (E.D.N.Y. May 19, 2004) (internal citations omitted) (opinions of consulting physicians are entitled to little to no weight because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day"). And although the Commissioner points to some findings by Dr. Lattuga that might be viewed as being inconsistent with Dr. Hausknecht's findings, a closer review indicates that the majority of the physicians' findings are consistent. For example, upon inspection of the lumbar spine, Dr. Lattuga observed tenderness and spasm with restricted range of motion of zero to 30 degrees of flexion and zero to 10 degrees of extension. He also noted that sensation was "abnormal with

11

altered sensation in the left L5-S1 nerve root distribution." (Tr. 274-75.) And like Dr. Hausknecht, Dr. Lattuga diagnosed Zubizarreta with lumbar sprain, lumbar radiculopathy and discopathy, and discussed surgical options with Zubizarreta, although he ultimately recommended continued "conservative treatment."[5]

In sum, the Court finds that no evidence in the record conflicts with Dr. Hausknecht's opinions. And the Commissioner, who has had two chances to fully develop the record, does not suggest that evidence not already in the record exists would contradict Dr. Hausknecht's opinions or shed additional light on Zubizarreta's functional capabilities. Thus, for all of the above reasons, the Court concludes that no good reason exists not to assign Dr. Hausknecht's opinions controlling weight.

II.   Disposition

While the Court recognizes that remand for further development of the record is typically warranted when an ALJ fails to properly apply the treating physician rule so that the Commissioner can correct the error and then determine whether a claimant is disabled, the Court concludes that here remand would be futile as correct application of the rule can only lead to the conclusion that Zubizarreta was disabled as of October 25, 2004. See Byrd v. Apfel, 2000 WL 1100336, at *3 (E.D.N.Y. Aug. 2, 2000) ("The Court . . . need not remand to the ALJ 'where application of the correct legal standards to the record could lead to only one conclusion'") (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Dr. Hausknecht noted on several

---

[5] The Commissioner's suggestion that Zubizarreta is not disabled because he has not elected to have surgery is unpersuasive. Indeed, while the Commissioner notes that Dr. Lattuga discussed the possibility of surgery, Dr. Lattuga ultimately recommended continued non-surgical conservative treatment. In any event, that Zubizarreta has not had surgery is not substantial evidence that he is disabled. See Ellington v. Astrue, 641 F. Supp. 2d 322, 332 (S.D.N.Y. 2009) (citing Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).

occasions that Zubizarreta walked with an antalgic gait and presented with spasm and tenderness in his lower back. MRI results revealed disc herniation at L4-5 impinging on the L5 nerve root and two EMG/NCVs revealed evidence of chronic radiculopathy. The seated straight leg raise test and other clinical tests -- which test for the existence of herniated disc in the lower back -- were positive on several occasions. These clinical findings and diagnostic tests confirm Dr. Hausknecht's opinions that Zubizarreta was completely disabled and unable to perform even sedentary work, see Moore v. Astrue, 2009 WL 2581718, at *10 (E.D.N.Y. Aug. 21, 2009) ("In the Second Circuit, MRI evidence can support an opinion with respect to an RFC"), and also support Zubizarreta's subjective complaints of pain, see Taylor v. Astrue, 2009 WL 2390762, at *4 (W.D.N.Y. July 31, 2009) ("Because the MRI results provide objective evidence to support the plaintiff's subjective complaints of pain, they support rather than contradict the conclusions of the plaintiff's treating physicians"). Thus, given the strong evidence of disability, Zubizarreta's consistent complaints of pain, the Commissioner's concession that he has failed to create an adequate record on two occasions, the lack of any claim by the Commissioner that further evidence would provide support for finding that Zubizarreta is not disabled, and the fact that Zubizarreta filed his application for benefits in 2003, the Court does not hesitate to remand so that the Commissioner can calculate benefits as of October 25, 2004. See Molina v. Barnhart, 2002 WL 377529, at *10 (S.D.N.Y. Mar. 11, 2002) ("The combination of the strong evidence of disability, the Commissioner's admitted error, the likelihood that further evidence would not provide evidence that plaintiff is not disabled, and the long delay calls for an award of benefits and a remand solely for the purpose of calculating the amount of benefits.").

At the same time, the Court cannot say that the evidence persuasively establishes that Zubizarreta's confluence of knee pain, back pain, and obesity was disabling as of May 14, 2003.

To be sure, Zubizarreta's herniated disc did not just come about on the morning of October 25, 2004, when he first visited Dr. Hausknecht, and the Court would not be at all surprised if the Commissioner ultimately found Zubizarreta disabled as of May 14, 2003. However, the record is unclear as to when Zubizarreta started experiencing back pain, let alone pain significant enough to contribute to his inability to perform even sedentary work. For example, in his application for N.Y.P.D. retirement disability benefits filed in October 2002, Zubizarreta noted that he was unable to perform his police duties because of the "serious injury to [his] right knee resulting in major surgery. . . . [and] constant pain." In granting his application for retirement benefits in January 2003, the N.Y.P.D. Medical Board did not mention that found Zubizarreta was complaining that back pain limited his ability to work and he was found unable to perform his duties as a police officer solely on the basis of his right knee injury and attendant knee pain. (Tr. 231-34.)

Similarly, in his initial application for social security disability benefits dated August 17, 2003, Zubizarreta listed "injury and subsequent surgery to reconstruct right knee" and "chronic pain in right knee" as the conditions limiting his ability to work. (Tr. 120-29.) And in a supplemental disability application dated February 5, 2004, Zubizarreta stated that the pain in his right knee had worsened since August 2003, that he was under his physician's care for the pain, and that he was attending physical therapy. (Tr. 163-69.) Neither application references back pain. Further, while Zubizarreta reported to Dr. Thomas Weiss, a consulting orthopedist, in October 2003 that he was suffering from pain in the left buttock that radiated down his leg, he reported that the pain occurred "occasionally" and that it had only come about recently. On inspection of the lumbar spine, Dr. Weiss noted that there was no evidence of spasm or tenderness, and the seated straight leg raise test -- which tests for the existence of herniated discs

in the lower back -- was negative. He opined that Zubizarreta had no limitations of the lower back.

Because the Court cannot say with certainty that persuasive evidence exists that Zubizarreta was disabled as of May 14, 2003, the determination of whether his confluence of his knee pain, back pain and obesity was disabling on that date is a determination that is best left to the Commissioner. In doing so, the ALJ is reminded to follow the procedures detailed in SSR 83-20, which makes clear that "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity" and "the date alleged by the individual should be used if it is consistent with all the evidence available." Telfair v. Astrue, 2007 WL 1522616, at *8 (S.D.N.Y. May 15, 2007) (citing SSR 83-20)). The ALJ should consider calling upon the services of a medical advisor in determining the correct onset date, see id., and shall provide a convincing rationale for the date chosen, see id.; see also McCarthy v. Astrue, 2007 WL 4444976, at *7 (S.D.N.Y. Dec. 18, 2007).

## CONCLUSION

For the reasons set forth above, the case is remanded for further proceedings consistent with this decision. The Court agrees with the Commissioner that a new ALJ should be appointed on remand to calculate benefits and determine Zubizarreta's onset date. Finally, given the limited purpose of remand and the fact that neither party suggests that the record is incomplete, there is no reason to further delay proper adjudication of this matter and the Court urges the Commissioner to do so as soon as possible.

SO ORDERED.

Dated: Brooklyn, New York
June /4, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge